**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chelsea Mckinney,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-00114-PHX-GMS<br><br>**ORDER** |

At issue is the denial of Plaintiff Chelsea Mckinney's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 11), and it affirms the Administrative Law Judge's ("ALJ") decision (AR at 13-23) for the reasons addressed herein.

**I.      Background**

Plaintiff filed her Application for SSDI benefits on February 7, 2018, alleging a disability beginning on August 31, 2017.  (AR 13).  Plaintiff's Application was initially denied on August 27, 2018, and upon reconsideration on January 11, 2019.  (*Id*.)  A hearing was held before ALJ Michael A. Lehr on June 25, 2020.  (*Id.* at 29-54).  Plaintiff was 33 years old at the time of the hearing.  (*Id.* at 38).  Plaintiff's Application was denied in a decision by the ALJ on July 9, 2020.  (*Id*. at 23).  Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed.  (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of degenerative disc disease of the lumbar spine status post surgeries. (AR 15). While the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with a number of limitations and thus was not disabled. (*Id.* at 17).

Plaintiff argues that the ALJ erred in finding not persuasive the opinion of her treating physician, Dr. John Ehteshami, M.D., and in failing to give clear and convincing reasons to discount her subjective symptom testimony. (Doc. 12). Plaintiff also briefly argues that the ALJ's decision is constitutionally defective because the SSA's structure of allowing its Commissioner to serve longer than a presidential term of office "violates separation of powers." (Doc. 12 at 19). The Court has reviewed the medical record and will discuss the pertinent evidence in addressing the issues raised by the parties.

**II.    Legal Standards**

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the movant. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. Analysis**

Plaintiff argues that the ALJ erred in finding not persuasive the opinion of Dr. Ehteshami, and in failing to give clear and convincing reasons to discount her subjective symptom testimony. (Doc. 12). Plaintiff also argues that the ALJ's opinion is "constitutionally defective." (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 18). The Court will consider the issues in turn.

    **A.**     **The ALJ did not err in his consideration of Dr. Ehteshami's opinion.**

Dr. Ehteshami, Plaintiff's treating orthopedic surgeon, completed a medical source statement in the form of a check-box questionnaire on July 29, 2019. (AR 731-33). Therein, Dr. Ehteshami opined that Plaintiff's symptoms caused an extreme limitation in the ability to walk, but that she did not require a hand-held device to assist with ambulation. (*Id.*) He opined that Plaintiff experienced pain "constantly," and that she could sit, stand,

and walk for a total of one hour each in an eight-hour workday. (*Id.*) Dr. Ehteshami also opined that Plaintiff could frequently use fine motor skills of both her right and left hand. He concluded that Plaintiff would miss more than four days of work per month as a result of her impairments. (*Id.*)

The ALJ found this opinion to be not persuasive, finding it to be inconsistent and unsupported by the record. (AR 21). Specifically, the ALJ mentioned that it was a check-box style questionnaire with no explanations or references to the medical record, and that it was generally not consistent with Plaintiff's MRIs and X-rays. (*Id.*) Moreover, the ALJ took issue with the opinion that Plaintiff had an extreme limitation in the ability to walk because many exams noted that Plaintiff ambulated normally and Plaintiff herself denied having difficulty ambulating. (*Id.*) Plaintiff argues that these were not sufficient reasons for finding Dr. Ehteshami's opinion to be not persuasive, and that it was error for the ALJ to reject the opinion because it was a check-box questionnaire. (Doc. 12 at 6).

As Plaintiff applied for disability benefits after March 27, 2017, the new set of regulations for evaluating evidence from medical providers applies to this case. *See* 20 C.F.R. § 416.920c. These regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations for considering physician opinions states as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations define "medical opinion" as "a statement from a medical source

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 4 -

about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

As to the ALJ's first basis for finding Dr. Ehteshami's opinion not well-supported by the record, the ALJ stated that no signs or laboratory findings were cited in support of the limitations assessed. (AR 21). As an initial matter, there is nothing incorrect about this statement. A review of this opinion confirms the accuracy of the ALJ's statement that no objective clinical findings were cited in support of the conclusions reached. (*Id.* at 731-33). Plaintiff argues that medical providers are not required to provide clinical findings when filing out assessments such as here. (Doc. 12 at 6). Plaintiff also cites to a number of medical records not cited by the ALJ that Plaintiff feels supports Dr. Ehteshami's

opinion, including one where he states, "I want her to use a walker at this point." (AR 568). However, Dr. Ehteshami's questionnaire stated that Plaintiff does not require the use of an assistive device for walking, so these arguments do not support Plaintiff's position, but rather support the ALJ's conclusions that the questionnaire was not consistent with the medical record. (*Id.* at 732). Nevertheless, the Court generally agrees that check-box forms are by their nature seeking general information, and therefore, they do not ask the provider to cite to medical records. Because this was but a single reason mentioned in the ALJ's opinion, the Court finds any error here harmless. *See Jennings v. Saul*, 804 F. App'x 458, 461 (9th Cir. 2020).

      Next, the ALJ's concluded that Dr. Ehteshami's opinion that Plaintiff was extremely limited in the ability to walk was not supported by the record. (AR 21). Plaintiff argues that this finding was an inaccurate reflection of the evidence. (Doc. 12 at 7-8). In support of his finding, the ALJ cited to a number of records. First, the ALJ cited to a May 14, 2018, record where it was reported that Plaintiff had "no trouble ambulating," and denied foot slap. (AR 21, citing 877). That record also states that Plaintiff had no new trauma "other than lifting her kids and throwing them around despite being told not to do any heavy lifting." (*Id.*) One cited record did note that Plaintiff was using a walker. (*Id.* at 378). However, three other records cited by the ALJ noted normal gait and station and 5/5 strength in both lower extremities, with the exception of 4/5 strength in the right foot. (*Id.*, citing 379, 386, 407). A review of the records cited by the ALJ supports the ALJ's conclusion that Dr. Ehteshami's opinion of severe impairments in the ability to walk were not supported and were not consistent with the evidence from other medical sources and nonmedical sources. *See* 20 C.F.R. 404.1520c(c)(2). Therefore, the ALJ did not err in relying on these medical records in determining whether Dr. Ehteshami's opinion was supported by the record. Regardless of whether Plaintiff views the evidence of record in a different light, the Court must defer to the ALJ where his interpretation of the evidence is rational. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

must be upheld."). The ALJ did not err in his discussion of this opinion.

Lastly, the ALJ referred to Dr. Ehteshami's opinion that Plaintiff could only sit, stand, or walk one hour each in an eight-hour day, stating that this necessarily meant that Plaintiff would need to lie down or recline the remaining five hours and finding this to be unsupported by the record. (AR 21). Plaintiff argues that the Dr. Ehteshami's opinion was based on an "eight-hour workday" rather than "an 8-hour day" as referred to by the ALJ and that "[t]his distinction is important." (Doc. 12 at 7). The Court is unsure how the distinction that Plaintiff raises impacts the findings of the ALJ, but the Court need not reach the issue. Given the determination that the ALJ gave proper reasons to finding this opinion not-persuasive, it is unnecessary to decide whether the ALJ's other proffered reasons for discrediting this opinion were also valid. *Cf. Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate conclusion, such is deemed harmless and does not warrant reversal.") (internal quotation marks omitted); *see also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, *4 (D. Ariz. 2021) (citing cases).

### B. The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

Plaintiff testified that she had constant pain in her legs, arms, and back. (AR 40-41). She testified that she could only sit for 20 to 30 minutes before the pain was intolerable. (*Id.*) In order to alleviate back pain, she changed positions multiple times per day, from sitting to standing and standing to sitting. (*Id.* at 42). She testified that laying down was not comfortable and she had to be supported with multiple pillows. (*Id.*) She testified that she could drive for about an hour to an hour and a half before she had to take a fifteen minute break. (*Id.* at 48). Plaintiff's attorney noted that Dr. Ehteshami recommended Plaintiff use a walker in August 2016. (*Id.* at 42-43). Plaintiff responded that she used the walker "quite a bit" at first, but then tried to not rely on the walker in order to strengthen her body. (*Id.*) Plaintiff testified that she could prepare meals and

perform daily activities but that she required the assistance of her husband and children. (*Id.* at 44-45). She testified that she could go boating with her family, but if they hit bumps in the water, she experienced pain the following day. (*Id.* at 47-48). Plaintiff argues that her impairments preclude all employment. (Doc. 12). The ALJ found that she had the RFC to perform sedentary work. (AR 17).

Plaintiff argues that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence in the record to discredit her symptom testimony, but rather "cherry-picked and mischaracterized" pieces of the record. (Doc. 12 at 18). Plaintiff argues that the ALJ "implies that [her] purported lack of work ethic is the cause for her inability to work" and that this was in error. (*Id.* at 12). Plaintiff also argues it was error for the ALJ to rely on inconsistencies in the record with regard to her use or non-use of a walker and on whether Plaintiff was benefitting from her medications and treatments. (*Id.* at 16-17). Lastly, Plaintiff argues the ALJ erred in determining that her activities of daily living were inconsistent with her symptom testimony. (*Id.* at 17-18).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains her decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).

Here, the ALJ discussed numerous treatment records to support his decision and cited to specific records to support his findings more thoroughly than is often seen in these decisions. (AR 17-21). The ALJ found that the record was not entirely consistent with the Plaintiff's allegations of disabling symptoms. (*Id.* at 18). Plaintiff first argues that it was error for the ALJ to find that her "lack of work ethic" was the cause for her inability to work. (Doc. 12 at 12). The ALJ noted that Plaintiff reported to a treating provider in September 2017 that she "quit her job due to poor pay and dysfunctional environment." (*Id.* at 18, citing 375). Plaintiff has not shown how it was harmful error for the ALJ to cite to Plaintiff's own statements to a medical provider. Moreover, the ALJ does not state that Plaintiff has a "lack of work ethic" as Plaintiff argues in her Brief. Rather, the ALJ discusses Plaintiff's earning records and employment history during the relevant time frame and cites to Plaintiff's own statements about her reasons for leaving a previous job. The Court finds no error here.

Next, the ALJ discussed Plaintiff's September 2016 post-operative imaging which showed stable hardware and only mild-to-moderate stenosis. (*Id.* at 18, citing 724-26). Subsequent imaging performed in June of 2017 was also discussed, which confirmed that Plaintiff's back was "unchanged" from the previous imaging and confirmed that there was no more than mild-to-moderate narrowing. (*Id.*, citing 892-93). The ALJ discussed that in May of 2018, Plaintiff's orthopedic surgeon noted that Plaintiff had been "good for about a year" after surgery but that in recent months she was struggling with pain. (*Id.*, citing 680). However, the ALJ discussed imaging of the lumbar spine which was generally consistent with earlier imaging and providers noted that the area was observed "without obvious complication." (*Id.* at 680, 889-91). The ALJ also discussed records stating that there was no significant central canal narrowing and neural foraminal narrowing was mild, which providers reported "actually reflects improvement over earlier studies." (*Id.*, citing 890). Next the ALJ discussed updated bending X-rays ordered by Plaintiff's orthopedic surgeon to "determine whether her spondylolistheses at L4-5 had gotten worse," but those results were completely normal. (*Id.*, citing 680, 887). The ALJ also discussed, among

other findings, that Plaintiff had normal deep tendon reflexes, normal neurologic signs, and no difficulty walking. (*Id.*, citing 877-79). Contrary to Plaintiff's arguments here, these are all valid reasons supported by substantial evidence in the record and the Court finds no error here.

Plaintiff also argues that the ALJ erred when finding that Plaintiff's pain was controlled by medications. (Doc. 12 at 16-17). The ALJ found that Plaintiff took a number of medications that were useful and she reported no side effects but acknowledged that "she did experience pain." (AR 20, citing 404). Plaintiff argues that it was error for the ALJ to solely rely on a medical record where Plaintiff's pain had decreased from a 9 out of 10 in severity to 7 out of 10. (Doc. 12 at 17). Plaintiff also argues that she never stated that the medication was "useful" as the ALJ describes but concedes that the "reduction of a pain level from 9 to 7 could be characterized as 'useful.'" (*Id.*) Moreover, Plaintiff argues that while the ALJ cites to a medical record that states that Plaintiff did not have any side effects that she reported in a different record that she experienced weight gain. (*Id.*) Plaintiff has not established that any of the ALJ's findings here were not based on substantial evidence in the record. The Court finds no error here.

As to Plaintiff's activities of daily living, the ALJ noted that she went shopping, drove a car, picked her children up from school, did light household chores such as washing the dishes and doing laundry, cooked, socialized with friends, and went to the movies and out to eat. (*Id.* at 20, citing 183, 610). Plaintiff does not take issue with the ALJ's listing of her activities, other than to argue that these activities do not necessarily show a consistency to sustain full time employment. (Doc. 12 at 18). While Plaintiff is correct that a claimant is not required to be completely incapacitated in order to be found disabled, it is also true that an ALJ may consider the Plaintiff's daily activities to determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter*, 806 F.3d at 488–89. The ALJ did so here. Therefore, the Court finds no error in the discussion of Plaintiff's daily activities.

The ALJ also noted that Plaintiff played with her children and cited to an emergency

room visit where Plaintiff sustained an injury playing with her children after "throwing them around despite being told not to do any heavy lifting." (*Id.*, citing 877). Plaintiff argues that rather than being inconsistent with her allegations of disabling limitations, this event is consistent with her allegations, as the lifting and throwing of her children resulted in a trip to the emergency room. (Doc. 12 at 17). The Court disagrees and finds that it is noteworthy that Plaintiff was able to pick up and throw her children based on the disabling limitations she alleged. Therefore, it was not error for the ALJ to mention this event contained in the medical record. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) ("ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities").

The ALJ set forth multiple specific reasons supported by substantial evidence for discounting some of Plaintiff's subjective symptom statements. Based on the above, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence. The ALJ properly concluded that the examinations in the medical record and Plaintiff's own testimony about her activities of daily living did not support her claims of disabling limitations, and therefore, properly found that her subjective symptom testimony was not entirely persuasive. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld"); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1190 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806 F.3d at 488–89. The ALJ did not err here.

    **C.**    **Plaintiff's Constitutional Deficiency Argument is Without Merit.**

Plaintiff briefly argues she was deprived of a valid adjudicatory process because the provision of the Social Security Act pertaining to the Commissioner's removal for cause (*i.e.*, "neglect of duty or malfeasance in office"), 42 U.S.C. § 902(a)(3), is unconstitutional

under the separation of powers doctrine. (Doc. 12 at 19-21). Because the ALJ derived his power from the Commissioner—who, Plaintiff contends, had no Constitutional authority—Plaintiff believes she was deprived of a "valid administrative adjudicatory process." (*Id.*) In support, Plaintiff cites *Seila Law, LLC, v. CFPB*, where the Supreme Court decided the question of whether the Dodd-Frank Act conferred unconstitutional removal protection to the Director of the Consumer Financial Protection Bureau ("CFPB"). 140 S. Ct. 2183, 2191-95 (2020). There, the Supreme Court held the for-cause restrictions on the President's ability to remove the Director infringed on the President's power under Article II to remove executive officers at will. *Id.* at 2197. After concluding that the offending provision was severable from the remainder of the statute, the Court remanded for a factual determination of whether the challenged act had been ratified by an Acting Director who was unprotected from the unconstitutional for-cause removal restriction. *Id.* at 2210-11, 2224.

Plaintiff argues, "[t]his case should be remanded for a *de novo* hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." (Doc. 12 at 22). In response, the Commissioner relies on *Collins v. Yellen*—a post-*Seila* Supreme Court decision—for the proposition there is no nexus between the allegedly unconstitutional removal provision in the Act and the denial of Plaintiff's benefits claim. (Doc. 18 at 16). The constitutionality of the Commissioner's removal provision notwithstanding, Defendant argues Plaintiff cannot show that the removal restriction actually caused her harm, which, the Defendant contends, is required under *Collins*. (*Id.*) Defendant further argues that this particular ALJ's appointment was ratified by an Acting Commissioner not entitled to statutory tenure protection under the Act and, consequently, that there is no separation of powers concern in this case. (*Id.*) Defendant lastly argues that any constitutional violation is harmless error under the De Facto Officer Doctrine, the Rule of Necessity, and other broad prudential considerations. (*Id.* at 16-17).

Plaintiff does not respond to any of the Commissioner's arguments on this topic in

her Reply. (Doc. 19). In fact, Plaintiff does not mention this issue at all in her Reply. Nonetheless, the Court will consider the merits of the argument.

In *Collins*, the Supreme Court considered a shareholder suit challenging the constitutionality of certain acts undertaken by the Federal Housing Finance Agency ("FHFA") as conservator for two federally-chartered mortgage financing companies in the wake of the 2008 housing crisis. *Collins v. Yellen*, 141 S. Ct. 1761, 1770-76 (2021). The Supreme Court held that while the challenged Act's for-cause removal provision insulated the FHFA's Director from at-will termination by the President in violation of Article II, "there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the [challenged act] as void." *Id.* at 1787. The Supreme Court distinguished the facts of *Collins* from those of *Lucia*, which "involved a Government actor's exercise of power that the actor did not lawfully possess." *Id.* at 1788 (internal citations omitted). The Court found no basis to conclude "that any head of the FHFA lacked the authority to carry out the functions of the office." *Id.* at 1788.

As the *Collins* Court's discussion of *Lucia* makes clear, the ALJ's decision is only per se unconstitutional in this context if he lacked the authority to make it, that being if he was not properly appointed. *Id.* at 1788; *see also Lucia*, 138 S. Ct. at 2055 ("This Court has also held that the appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official.") (internal citations omitted). Unconstitutional for-cause removal challenges alone, however, will not automatically serve to invalidate the ALJ's decision. *See Collins*, 141 S.Ct. at 1788-89. There must be a nexus "between the purported harm and the challenged removal restriction." *Thomas E. v. Comm'r of Soc. Sec.*, 2021 WL 5415241, at *5. (W.D. Wash. Nov. 19, 2021) (citing *Collins*, 141 S. Ct. at 1781-83, 1789)). The unconstitutional provision must have caused "compensable harm" to the movant. *See Collins*, 141 S. Ct. at 1789.

Here, Plaintiff asserts that the ALJ had no lawful authority, but Plaintiff does not

adequately explain how this ALJ's appointment was in any way unconstitutional. (Doc. 12 at 19-21). As explained in *Collins*, an unconstitutional removal provision does not automatically invalidate a Commissioner's action when there is no challenge to that individual's appointment. *Collins*, 141 at 1788-89. Consequently, *Lucia* is distinct from the present case insofar as *Lucia* involved an Appointments Clause challenge, and an automatic remand under *Lucia* is unwarranted here.

Moreover, Defendant asserts that the appointment of the ALJ in question was ratified by then-Acting Commissioner Nancy Berryhill, as referenced in Social Security Ruling ("SSR") 19-1p. SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). As the Supreme Court noted in *Collins*, "[w]hen a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure." *Collins*, 141 S. Ct. at 1782 (citing *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)). The applicable statute here does not explicitly limit the President's ability to remove an Acting Commissioner. 42 U.S.C. § 902(b)(4). Because Ms. Berryhill, an Acting Commissioner, ratified the ALJ's appointment, Plaintiff's unfavorable decision did not suffer from the alleged constitutional defect. The Court concludes, consistent with the holdings of other district courts, that the Social Security Act's for-cause removal provision did not apply to Ms. Berryhill, and thus there was no harm to Plaintiff. *Thomas E. v. Comm'r of Soc. Sec.*, 2021 WL 5415241, at *5 (W.D. Wash. Nov. 19, 2021); *Alice T. v. Kijakazi*, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Boger v. Kijakazi*, 2021 WL 5023141, at *3 n. 4 (W.D.N.C. Oct. 28, 2021).

Moreover, even assuming the ratification of the ALJ appointment did not occur, Plaintiff fails to establish a sufficient nexus between the constitutionally defective removal provision and any harm that she suffered personally. Therefore, Plaintiff has not established a basis for a *de novo* hearing of her case.

**IV.   Conclusion**

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly considered the medical opinion testimony and properly

discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence. Moreover, the decision was not constitutionally defective. Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 12th day of July, 2022.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge